WALKER et al. v. SEEBERGER.

*(District Court, N. D. Illinois.  May 6, 1889.)*

1. CUSTOMS DUTIES—CLASSIFICATION—HAT ORNAMENTS.
   Chenilles, made of a warp of silk threads laid close together with cross-threads or filling, so as to make a woven fabric, and then cutting it into strips of the width of several of the warp-threads, and then raveling out the threads on the edges of the strip, thus making a cord with a nap or burr extending around it, are, though used only for working into embroideries, dutiable under Heyl's Revenue Laws, cl. 383, as articles not specially enumerated, "made of silk, or of which silk is the component material of chief value," and not, under clause 381, as "thrown silk in gum, not more advanced than singles, tram, organzine, sewing silk, twist, floss in the gum, and spun silk, silk thread, or yarns of every description."

2. SAME.
   Though goods are used chiefly or solely in the manufacture and ornamenting of hats, bonnets, etc., if they are bead ornaments, or are composed of silk or of metal, they are dutiable under the specific clauses relating to such articles.

3. SAME—ARTIFICIAL FLOWERS.
   The tariff act contains no specific duty upon artificial flowers as such; but section 2499 provides that "there shall be levied and collected on each and every non-enumerated article which bears similarity either in material, quality, texture, or the use to which it may be applied, to any article enumerated, * * * the same rate of duty which is levied and charged on the enumerated article which it most resembles," etc.  A specific duty is imposed on "artificial flowers and parts thereof, of whatever material, for millinery use, and not specially enumerated."  *Held,* that artificial flowers, stuck into a little stand or box, and salable as ornaments, and not good enough for millinery uses, but resembling flowers so used more than any other article, are dutiable under the last clause quoted.

4. SAME—PROTEST—GROUNDS.
   Where duties are paid under protest, on the single ground that the goods should have been classified as material for making or ornamenting hats, bonnets, etc., and not otherwise provided for, it cannot be objected, to defeat the collector's classification, that the goods might more properly have been put into some other specific class than that designated by the collector.

5. SAME—ACTION TO RECOVER BACK—BURDEN OF PROOF.
   In an action to recover back duties paid under protest, the burden of proof is on the plaintiffs to show by a preponderance of testimony that the goods did not properly belong to the class to which they were assigned by the collector, and that they were dutiable only as claimed in the protest.

At Law.

Action by James F. Walker et al. against A. F. Seeberger, to recover back customs duties paid under protest.

*P. L. Shuman,* for plaintiffs.

*Graham H. Harris,* Asst. U. S. Atty., for defendant.

BLODGETT, J., (*charging jury.*)  This suit is brought to recover back duties which the importer, the plaintiff in this case, paid to the collector of this port under protest.  It is a method allowed by the statutes of the United States, by which an importer can test the legality of the collector's classification and assessment of goods which he imports.  It does not involve any personal controversy with the collector, but is merely a means by which the importer is able to have a judicial determination as

to whether the collector has properly classified and assessed his goods for duty. The goods in question were imported by the plaintiffs in the year 1887, and were included in three invoices, describing the goods by their commercial names and the prices.

The first question raised is in regard to certain goods called "chenilles," which were imported by the plaintiff in the fall of 1887, and are descibed in the invoice dated October 8, 1887, and are represented by the sample which is in evidence before you, No. 7,789. The collector classed these goods as a manufacture of silk not otherwise provided for, under clause 383 of Heyl's Arrangement of the Customs Laws, which reads as follows:

"All goods, wares, and merchandise not specially enumerated or provided for in this act, made of silk, or of which silk is the component material of chief value, 50 per cent. *ad valorem.*"

The plaintiffs claim that this class of goods was dutiable at 30 per cent. *ad valorem*, under clause 381, which I will read to you:

"Thrown silk in gum, not more advanced than singles, tram, organzine, sewing silk, twist, floss in the gum, and spun silk, silk thread, or yarns of every description, purified or dyed, 30 per cent. *ad valorem.*"

The plaintiffs claim that this article is silk thread or yarn, as described in clause 381, and therefore dutiable under the provisions of that clause. The testimony on the part of the plaintiffs tends to show that this article is used mainly for embroidering purposes, and the plaintiffs claim that it should therefore be classed as a thread. The proof on the part of the defendant is that it is not a thread, but is a fabric made by weaving, that is, by filling up a warp of silk threads, laid close together, with cross-threads or filling, so as to make a woven fabric, and then cutting this fabric into strips of the width of several of the warp-threads, and then raveling out the threads on the edges of the strip, so as to leave two or more threads in the middle of the strip, thus leaving the ends of the cross-threads or filling extending beyond the warp-threads, and then, by twisting the central threads, the ends of these cross-threads are made to form a burr or nap around the warp-thread, so that you have a cord with a nap or burr extending around it. Sample 642 also represents a chenille which is a part of the goods in controversy. The use to which these goods is applied does not determine their dutiable rate. If they are composed of silk, or silk is the component material of chief value, then they are dutiable under clause 383 as a manufacture of silk, unless you find from the proof that they are silk thread or yarn; but they are not such thread and yarn if they are made by weaving them into a fabric, and then cutting the fabric into strips, as the proof tends to show, because, by the process of weaving these threads into a fabric, and then cutting them into strips, you pass beyond the process of producing thread, and make a fabric of it. "Yarn" means something which is only spun, and produced longitudinally by the process of spinning. So that, if you find, notwithstanding the testimony, that the only use to which these goods are applied is that of working them into embroideries, that they

are made of silk by weaving first, then cutting the woven fabric into strips, they are not yarns, within the meaning of clause 381.

The next controversy arises,—or series of controversies,—upon the invoice of September 8, 1887, entry No. 6,784. The entry described the goods in question as "materials for making and ornamenting hats, bonnets, and hoods;" and the claim on the part of the plaintiffs is that they were all dutiable at the rate of 20 per cent. *ad valorem*, under clause 448 of Heyl's Arrangement of the Tariff Act of March 3, 1883. The collector classed part of them as manufactures of silk, and assessed them at a duty of 50 per cent. *ad valorem*, under clause 383, which I have just read to you, and classed others as manufactures of metal, and assessed them at a duty of 45 per cent. *ad valorem*. The plaintiffs paid these duties under protest, and bring this suit to recover back the difference between the amounts which they paid and the 20 per cent. which they insist should have been the duty.

The question in regard to these goods is, are they materials for making or ornamenting hats, bonnets, and hoods, and as such dutiable at 20 per cent. *ad valorem*, within the provision of clause 448? They are not so dutiable if there are provisions found elsewhere in the tariff laws for fixing the duty upon them, because clause 448 only fixes the duty at 20 per cent. *ad valorem*, when the duty is not otherwise provided for. This invoice contains a large number of items which have been designated during the trial by numbers. The first item in question is No. 6,334 T, invoiced by the name of "fancy laces," and is represented by the sample No. 6,334. The proof on the part of the plaintiffs tends to show that it is made of metal wire or tinsel with a little cotton. The proof on the part of the plaintiffs also tends to show that it is used wholly as hat and bonnet trimming. It was classed by the collector as a manufacture of metal, and duty assessed at 45 per cent. *ad valorem*. It is now contended on the part of the defendant that these goods are really dutiable under clause 427, as metal lace. I will read clause 427 to you: "Epaulets, galloons, laces, knots, stars, tassels, and wings of gold, silver, or other metal, 25 per cent. *ad valorem*." It is immaterial for the purposes of this case, and for the purposes of the questions before you, whether the collector acted rightfully in classing these as dutiable at 45 per cent. *ad valorem* as a manufacture of metal, or whether he should have assessed them for duty under clause 427, as metal laces. It is enough for the purposes of this case—and I say this once for all in reference to all the articles—if the collector was not bound to have classed these goods as material for making and ornamenting hats, bonnets, and hoods, the plaintiffs must fail in their case, because that is the contention on the part of the plaintiffs, and their protest insists that they are dutiable only as materials for making and ornamenting hats, bonnets, and hoods.

The next items are Nos. 6,096 and 6,097 on the invoice, which were invoiced as "fancy galloons," classed as manufactures of metal, and duty assessed at 45 per cent. *ad valorem*. No actual sample is produced of these goods, but they are said by the witnesses to be composed of silver and cotton, and to be like sample 170—2, and used exclusively for bands.

around the crowns of bonnets and hats, and to be too frail for use as dress trimming. The question which you will have to pass upon in regard to these goods is, are they metal galloons, such as are provided for in clause 427? That is, are they a manufacture substantially of metal, or is metal the component material of chief value in them, whether it was gold, silver, or any other metal? If they are a manufacture of metal, then they are not dutiable at 20 per cent. *ad valorem*, as material for hats, etc.

The next controversy is over several numbers which are invoiced as "fancy laces," and are described as Nos. 6,084, 6,084, 6,084, 6,084, 6,084, 6,084; the number being represented six times. The collector classed these goods as a manufacture of silk, and assessed a duty of 50 per cent. *ad valorem* upon them. The proof tends to show that the goods in question are composed of chenille and silk. They are represented by sample No. 145,934, "J. H. W.," and the proof tends to show that they are used only for hats and bonnets. Now, it makes no difference whether these goods are used only for hats and bonnets or not. If they are specifically dutiable by name or commercial description in some other clause of the statute than clause 448, then the plaintiffs must fail in their case, as I said. So that, if these goods which are entered as fancy laces are composed of silk, or if silk is the component of chief value, then they are properly dutiable, under clause 383, at 50 per cent. *ad valorem.*

The next controversy is over Nos. 68,431 B, and 64,031, invoiced as "fancy laces," and classed by the collector as manufactures of silk, and duty assessed at 50 per cent. *ad valorem.* There is no sample produced of these goods, but the goods are said by the witness to be like 146, 289, J. H. W. That is the sample which has been before the jury, and said to be used solely for hats and bonnets. You may remember this class of goods as the goods which the witness Mrs. McCormick said were in cashmere colors, or cashmere tints, and the only question is whether they are a manufacture of silk, or goods of which silk is the material of chief value. You have the sample before you, and you have the testimony of the witnesses. If they are manufactured of silk, or if silk is the material of chief value, they were properly dutiable as such under clause 383 of Heyl, and not as material for hats, bonnets, and hoods, as contended by plaintiffs.

The next controversy is over No. 6,052, invoiced as "velvet embroidery," and classed by the collector as a manufacture of silk, and duty assessed at 50 per cent. *ad valorem.* There is no sample produced of these goods, but it is described by the witness Mrs. McCormick as a piece of goods 22 inches wide, and made of silk, and designed to be cut up to make crowns for bonnets, and, as the witness said, not fit for any other use. But it makes no difference, gentlemen of the jury, for the purposes of this case, whether they were fit for any other use or not. If the goods were composed of silk, or silk was the component material of chief value, then the appraiser rightfully appraised them as a manufacture of silk.

The next article in controversy is No. 6,328 B, invoiced as "gold galloons," and classed as a manufacture of metal, and duty assessed at 45 per cent. *ad valorem.* There is no actual sample, but the witness selected from the samples one which she said was substantially like goods No. 6,328 B. The proof tends to show that there was not as much silk in the goods in question as in the sample No. 6,328 B, selected by Mrs. McCormick as similar to it, but was made so nearly all of gold thread that it was called bullion, and used solely on hats and bonnets as a trimming. If this was a gold lace within the meaning of the word "lace," then it comes within clause 427 as a metal lace. You are to pass upon the question of fact. If it is a metal galloon, or metal lace, then it passes under clause 427 as a galloon of metal, or metal lace, and is not dutiable as material for making or trimming hats, bonnets, etc.

The next controversy is over Nos. 6,019, repeated three times, 6644, 6,204, 6,204, 6,204, 6,204, which were invoiced as "embroidered velvets," and classed as manufactures of silk, at 50 per cent. *ad valorem.* There are no samples of these goods produced, but the proof tended to show that it was used for making and ornamenting hats and bonnets. It was classed as a manufacture of silk, and if it was silk, as the proof on the part of the plaintiffs without dispute tends to show, then it would be properly classified as silk goods, and not as bonnet material.

The next controversy is over No. 6,015, repeated four times, and 6,012, which was invoiced as "embroidered faille." It was classed as a manufacture of silk, at 50 per cent. *ad valorem.* No sample was produced. It is described by the witness as corded silk, embroidered with silk, and used only for bonnet crowns; valuable, as the testimony tends to show, chiefly for the embroidery. The same remark holds good in regard to these. If they were manufactures of silk, then the collector properly classed them as such.

The next item in this invoice is No. 6,006, 6,007, and 6,173, invoiced as an "embroidery," and classed as a manufacture of silk, and charged duty at 50 per cent. *ad valorem.* No sample is produced of these goods, but the witness describes them as a silk velvet, embroidered with silk, used only for hats and bonnets; and the same remark holds good in regard to this. If it was silk, then it was a manufacture of silk, and dutiable under clause 383, and not under clause 448.

The next controversy is over Nos. 6,174, 6,004, 6,175, 6,196, and 6,000, 6,000 repeated five times. The goods were invoiced as "embroidered insertions," and classed as a manufacture of silk. No sample was produced of these goods. They were described as a sort of combination of silk cordings intended to be sewn into part of the trimmings of a bonnet—the border of a bonnet or hat. The witness testified that they were suitable only for hats, but testified that they were a manufacture of silk; and, if so, then they were dutiable as a manufacture of silk.

The next controversy is over No. 6,003, invoiced as "embroidered velvet," classed as a manufacture of silk at 50 per cent. *ad valorem.* It is described as a silk velvet, embroidered all over with silk, and, as the witness says, used only for bonnet crowns. If it was silk velvet, embroid-

ered also with silk, then it was a manufacture of silk, within the meaning of the law, and not dutiable under the hat material clause, (448,) at ,20 per cent. *ad valorem.*

The next controversy is over Nos. 145,638, 145,642, invoiced as "watered velvet," and classed as a manufacture of silk, and charged with duty at 50 per cent. *ad valorem.* No sample of these goods is produced, but they are described as a silk velvet used to make velvet bonnets and special goods for millinery purposes, as the witness said. The same remark holds good in regard to these. If it was a silk velvet, or if silk was the component of chief value, and the proof tends to show that, then they were dutiable as a manufacture of silk, and not as hat and bonnet material.

The next controversy is over goods No. 146,289, invoiced as "embroidery," and classed as a manufacture of silk. It is represented by sample No. 146,289, J. H. W., and the proof tends to show that it is made of silk, and in trade known as "fancy lace," used for bonnet and hat trimmings. You have a sample before you, gentlemen, and if you are satisfied from the testimony that this was a manufacture of silk, then it was properly so classed, and was not entitled to pass under the hat material clause.

Nos. 145,620 and 145,974 are the next matters of controversy. They are invoiced as "watered velvets," and the same remark that was made in regard to the prior articles of the same description applies to these. If they were silk velvets, as the proof tends to show, then they were properly classed by the collector as a manufacture of silk, notwithstanding the fact that the witnesses testify that they were not usable for any other purpose than for the manufacture of bonnets.

The next controversy is over No. 2,857, invoiced as lace, which was classed as a manufacture of metal at 45 per cent. *ad valorem.* It is represented by sample No. 2,857, J. H. W. & Co., and the proof tends to show that they are made of metal wire around a cotton filling, and that the metal is the component of chief value. The proof also tends to show that it was only used for hat and bonnet trimmings, but if it was a metal lace, or is metal lace, then it comes within the provision of clause 427, and does not come within clause 428.

The next controversy is over the goods Nos. 2,838 and 2,025, which were invoiced as "galloons," and classed as a manufacture of metal. You have samples of those goods, which are numbered 2,838 and 2,025. The testimony tends to show that No. 2,838 is made of metal and beads, and that it has no other use; that the goods 2,025 is of metal, and is used only for hats and bonnets. The question is, were those goods metal galloons, and as such specifically dutiable as metal galloons, or did they not come within that description? If they were metal galloons, then, they were dutiable as metal galloons, and not as hat or bonnet trimmings.

The next controversy is over No. 10,088, repeated twice. They are invoiced as "galloons," and classed as a manufacture of silk; that is, they were silk galloons, I suppose. There is no sample here, but it is

said that they are similar to No. 6,328 D, except that they are of silk, and used only as material for bonnet crowns.   If of silk, then they were properly assessed at 50 per cent. *ad valorem*, instead of being assessable at 20 per cent. *ad valorem*, as claimed by the plaintiffs.

The next controversy is over 170—2, which were invoiced as steel galloons.   If these goods are galloons, and metal is the component part, —that is, metal beads, and the metal spangles which are woven in with the beads,—then they should be properly dutiable as metal galloons, and not as hat and bonnet trimmings.

The next controversy is over Nos. 608, 608, 462, 462, 605, and 605, which are invoiced as "embroideries," and classed as a manufacture of silk.   The testimony tends to show that they are made of silk with some linen backing, and used only for bonnet fronts and trimmings.   If, as I said in regard to the other goods, they are made of silk with linen backing, and if silk was the component of chief value, then they were properly assessed at 50 per cent., instead of 20 per cent.

In regard to the articles included in this invoice you will see that the collector classed them either as manufactures of silk or as manufactures of metal, or as beads, or bead ornaments, under clause 396.   When there is a specific provision in the law for a rate of duty on an article, the article must be assessed for duty under such provision.   For instance, a specific duty, as fixed by clause 427, on galloons of metal, and also on metal laces, and although metal galloons may be used to trim and ornament bonnets and hats, and metal laces may be used for the same purpose, yet they are dutiable specifically as metal galloons and laces, and hence the articles in controversy described, entered or invoiced as galloons and metal laces which were made of metal, are dutiable as such, and are not dutiable at 20 per cent., as contended for by the plaintiffs.   The fact that the collector erred in classing these as manufactures of silk, or as manufactures of metal, does not aid the plaintiffs' case. The plaintiffs' contention is that these goods are materials for making and ornamenting hats, bonnets, and hoods, and not otherwise provided for; and, if they are otherwise provided for, then they cannot be passed by the collector at a duty of 20 per cent. under clause 448, as material for making and ornamenting hats, etc., not otherwise provided for.   So, if you find as a question of fact from the proof that a part of the galloons and velvets in question are provided for in the clause in regard to manufactures of silk or in regard to metal laces, or in regard to metal galloons, then the plaintiffs must fail in their case as to such goods.   So, in regard to silk goods. and velvets, if those articles are composed of silk, or silk is the material in them of chief value, then they fall within the provision of clause 383, and not within hat material, under clause 448.   There being a specific duty on beads and bead ornaments, the goods in question which are made of beads, or of which beads are the material of chief value, are dutiable under clause 396, which provides for a duty on beads or bead ornaments of 50 per cent. *ad valorem.*

In this case the plaintiffs have the burden of proof.   The goods in question were classed, and duties assessed, by the collector, in the per-

formance of the duties of his office, and he had the aid of experienced appraisers, appointed to appraise and examine these goods, and he must be presumed to have been cognizant of the quality and character of the goods, and the plaintiffs must therefore overcome the action of the government officers in this respect by satisfactory proof, satisfying you that these goods are hat materials, and not such goods as the collector held them to be. The best evidence as to the material composing these goods would have been samples of the goods themselves. In many cases no samples are produced, and you have merely the verbal or word description of the plaintiffs' witnesses as to the quality and character of the goods. If the absence of samples renders the evidence as to such goods uncertain or unreliable, or so unsatisfactory that you can say you are not satisfied that the plaintiffs have so sufficiently described the goods as to enable you intelligently to pass upon the questions raised in the case, then you should find for the defendant.

The next controversy is over entry No. 5,789, which was classed by the collector as artificial flowers, and duty assessed upon them at 50 per cent. *ad valorem.* The plaintiffs claim that they are dutiable as a manufacture of cotton. The plaintiffs claim that those artificial flowers should have been admitted and classed under this clause, which I will read to you:

"Cotton cords, braids, gimps, galloons, webbing, goring, suspenders, braces, and all manufactures of cotton not specially enumerated or provided for in this act, a duty of 25 per cent. *ad valorem.*"

It is conceded that there is not in the tariff act, as it now stands, a specific duty upon artificial flowers as such. But the collector undoubtedly acted under section 2499, which provides "that there shall be levied and collected on each and every non-enumerated article, which bears similarity either in material, quality, texture, or the use to which it may be applied, to any article enumerated in this title and chargeable with the same rate of duty which is levied and charged on the enumerated article which it most resembles in any of the particulars before mentioned;" and it is conceded that the goods in question are not enumerated specifically in the law. Now, the collector undoubtedly acted under this section which I have just read to you, assuming that these artificial flowers most resemble the flowers used in the millinery business, because there is a clause of the law which provides a specific duty on "artificial flowers and parts thereof, of whatever material, for millinery use, and not specially enumerated." Now, the collector, assuming that this article now in controversy more nearly resembled the artificial flowers imported for millinery use than any other goods, classed them the same as artificial flowers for millinery use, and assessed a duty of 50 per cent. *ad valorem.* The contention on the part of the plaintiffs is, as I have stated, that they should have been classed as a manufacture of cotton. The testimony on the part of the plaintiffs tends to show that they are not artificial flowers for millinery use, because they are not good enough, —the quality is not sufficiently high to justify importing them for that purpose,—while the testimony on the part of the defendant is that they

are the same kind of flowers that are sold by dealers in millinery goods for millinery purposes. But they are stuck into a little stand or box, which makes them salable as ornaments. The question is whether, if these goods can be allowed to be imported in this form,—if artificial flowers can be allowed to be imported in this form,—whether it would not open the opportunity to large frauds upon the revenue, because they might introduce all kinds of flowers, the most expensive kind of flowers, upon a little stand of this kind,—a stand that costs nothing, or but a trifle,—or upon any kind of a paper box or a paper stand, or attach them to anything, so that they could say that they came as a specific article, and as soon as they arrived, and had passed the custom-house as a manufacture of cotton, remove the stand to which they are attached, and use them for millinery purposes. The question, then, is, did or did not the collector act wisely and within the law when he assimilated these goods to artificial flowers which are imported for millinery purposes? Did they or not most resemble artificial flowers imported for millinery purposes? And if, from the proof in the case, you are satisfied that they do more resemble the artificial flowers imported for millinery purposes than any other article, that they are more like those than they would be like a piece of cotton sheeting, or muslin, or any other cotton fabric, which was not worked into a flower,—because the leaves and stems of these are probably made of some cheap cotton fabric,—then it is for you to say whether the collector did not act within the power which is delegated to him under the law.